Terrence S. Jones, ISB No. 5811
Chynna C. Simmons, ISB No. 9936
QUANE JONES McCOLL, PLLC
US Bank Plaza
101 S. Capitol Blvd., Ste. 1601
P.O. Box 1576
Boise, Idaho 83701
Telephone (208) 780-3939
Facsimile (208) 780-3930
tsj@quanelaw.com
ccs@quanelaw.com

Attorneys for Defendant
River Run HOA, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRIAN HILL, ANNE HILL, and INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | Case No. 1:18-cv-00281-CWD |
| Plaintiffs, | MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| RIVER RUN HOMEOWNERS ASSOCIATION, INC., | |
| Defendant. | |

Defendant, River Run Homeowners Association, Inc. ("River Run" or "Defendant"), by

and through its counsel of record, submits this memorandum in support of its motion for summary

judgment. Plaintiffs Brian and Anne Hill (hereinafter "Hills") and Intermountain Fair Housing

Council, Inc. ("IFHC") (collectively "Plaintiffs") allege that Defendant River Run has engaged in

discrimination against families with minor children in violation of the Fair Housing Act, 42

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS
ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 1

U.S.C.A. §§ 3601 *et. seq*. As there is no genuine issue as to any material fact, River Run is entitled to judgment as a matter of law on Plaintiffs' claims.

## I.   PROCEDURAL HISTORY

Plaintiffs allege River Run violated the Fair Housing Act ("FHA") by failing to approve the Hills' application for a backyard fence and for allegedly retaliating against the Hills after asserting their rights under the FHA. Plaintiffs commenced this matter by filing a HUD Complaint with the United States Department of Housing and Urban Development ("HUD") on July 16, 2015. *See Aff. of Chynna C. Simmons in Supp. of Def. Mot. for Summ. J. ("Simmons Aff.")*, Ex. E. HUD conducted an investigation consuming over two years and on September 21, 2017, returned a finding of No Probable Cause. *See id*. Ex. F.

According to HUD, their investigation "did not reveal direct evidence of intentionally discriminatory terms and conditions." *Id*. Plaintiffs failed to establish a *prima facie* case of indirect discrimination because the evidence did not show "the third element of a terms and conditions claim [was] met . . . because [the Hills] did not meet the application requirements and abandoned the application process before [River Run] could render a final decision on the application." *Id*. Moreover, "the investigation did not reveal evidence that [River Run] approved similar fence applications by residents without children," the fourth element. *Id*.

Despite the conclusions of the HUD investigation Plaintiffs filed this action against River Run on June 29, 2018, alleging the very same FHA violations. *See* Dkt. 1 at ¶ 62. The parties have now conducted extensive discovery, both through the HUD investigation and in the present litigation. This has included thousands of pages of documents and numerous depositions. Filed concurrently with this Memorandum is the Defendant's Statement of Undisputed Facts which is

hereby incorporated and part of the record before the Court supporting the defense motion. For the reasons set forth herein, Defendant respectfully requests that this Court GRANT Defendant's Motion on all claims.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. F.R.C.P. 56(a); *Community Housing, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010). On summary judgment, this Court must consider the facts in light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Harris v. Itzhaki*, 183 F.3d 1043, 1050–51 (9th Cir. 1999) (same summary judgment standard applies to Fair Housing Act cases). However, the Plaintiffs must still "make a showing sufficient to establish" a genuine issue of material fact on the "element[s] essential to [their] case, and on which [they] will bear the burden of proof at trial." *Cleveland v. Policy Management Systems Corporation*, 526 U.S. 795, 806 (1999), *quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). "A dispute about a material fact is genuine if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* (*quoting Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511). Summary judgment under Rule 56(c) is proper if no genuine issues of material fact exist for trial. *Harris*, 183 F.3d at 1051.

# III.   ARGUMENT

Plaintiffs' Complaint advances one cause of action under the Fair Housing Act, 42 U.S.C. § 3601 *et. seq. See* Dkt. 1 ¶¶ 61-62. Plaintiffs allege River Run discriminated "against families with minor children based on their familial status . . . by imposing and posting rules that unreasonably restrict the activities of minor children, with the purpose of effect of excluding or otherwise discriminating against families with children from the River Run Subdivision in Boise." *Id*. at p.1. River Run denies that it engaged in any discriminatory conduct or violated the FHA. Dkt. 11. As discussed below, there are two recognized means of proving a discrimination claim under the Fair Housing Act per Ninth Circuit authority - disparate treatment and disparate impact. *See Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997).

Although phrased as a single cause of action, for purposes of this motion the defense will presume Plaintiffs have asserted claims for disparate treatment by River Run as against the Hills and claims for disparate impact against River Run that its architectural fencing rules indirectly discriminate against families with children. Plaintiffs allege violations of four provisions — 42 U.S.C. §§ 3604(a), (b), (c), and 3617 — of the Fair Housing Act. Dkt. 1 ¶ 62. Sections 3604(a), (b), and (c) prohibit discrimination in the sale or rental of a dwelling while Section 3617 prohibits retaliation, coercion, and intimidation in the exercise of a right protected under the Act. *See* 42 U.S.C. §§ 3604(a)-(c) and 3617. Because all of Plaintiffs' claims are without evidentiary support, the Defense is entitled to summary judgment.

**1.   Plaintiffs Cannot Prove a Violation of 42 U.S.C. § 3604 as River Run is an HOA and Not Engaged in the Sale or Rental of Housing.**

River Run is a nonprofit homeowners association. It does not sell or rent property. River Run has not been alleged to have discriminated in the sale or rental of property. *See* Dkt. 1 ¶¶ 8-

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 4

52. Rather, its Architectural Committee is alleged to have discriminated against the Hills by failing to approve their application for a fence. *Drake Aff.* Ex. G; *Simmons Aff.* Ex. B ⁋⁋ 3-7. Section 3604(a) of the Fair Housing Act provides it is unlawful to "refuse to ***sell or rent***" or to "otherwise make unavailable or deny, a dwelling to any person because of . . . familial status." 42 U.S.C. §3604(a) (emphasis added). Similarly, Section 3604(b) "prohibits discrimination against such persons in the terms, conditions, privileges of ***housing sale or rental***, or in the provision of services or facilities." *United States v. Branella*, 972 F. Supp. 294, 297 (D.N.J. 1997) (emphasis added); 42 U.S.C. §3604(b). Finally, Section 3604(c) "renders unlawful the making of any statement ***with respect to the sale or rental*** of a dwelling that indicates a discriminatory preference or limitation." *Id*. (emphasis added); 42 U.S.C. §3604(c).

In order to state a claim under 3604, "the plaintiffs must allege unequal treatment on the basis of [familial status] that affects the availability of housing." *Jackson v. Okaloosa County*, 21 F.3d 1531, 1542 (11th Cir. 1994). "Courts have applied this subsection to actions having a direct impact on the ability of potential homebuyers or renters to locate in a particular area, and to indirectly related actions arising from efforts to secure housing." *Southend Neighborhood Imp. Ass'n v. St. Clair Cty.*, 743 F.2d 1207, 1210 (7th Cir. 1984) (*citing Dillon v. AFBIC Development Corp.*, 597 F.2d 556 (5th Cir.1979); *Williams v. Matthews Co.*, 499 F.2d 819 (8th Cir. 1974).

Plaintiffs do not allege that they were hindered in their effort to acquire a dwelling. Instead, they allege they were discriminated against because River Run did not allow them a requested modification — to add a large backyard fence that was not compliant with the architectural rules of the subdivision. Sections 3604(a) and (b) of the Fair Housing Act were designed to prohibit discriminatory conduct that directly impacts an aggrieved plaintiff's ability to

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 5

locate housing in an area or obtain housing. It is undisputed that the alleged act of discrimination did not prevent the Hills from purchasing the Property.

These statutes were not designed to prohibit conduct that allegedly merely interferes with an individuals desired use or enjoyment of a dwelling. *See Lawrence v. Courtyards at Deerwood Association, Inc.*, 318 F.Supp.2d 1133, 1142 (S.D. Fl. 2004); *See also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 343–46 (6th Cir.1994) (concluding neighbors not liable for bidding against protected group even if bid motivated by discriminatory animus); *Clifton Terrace Assocs., Ltd. v. United Technologies Corp.*, 929 F.2d 714, 719 (D.C.Cir.1991) (holding FHA addresses problems of housing availability not problems of housing habitability); *Southend Neighborhood Improvement Assoc. v. St. Clair County*, 743 F.2d 1207, 1210 (7th Cir.1984) (concluding FHA does not protect "intangible interests in ... already-owned property"); *Hall v. Lowder Realty Co.*, 160 F.Supp.2d 1299, 1319–20 (M.D.Ala.2001) (granting summary judgment against FHA claim because plaintiff did not show alleged discriminatory conduct affected availability of housing); *Miller v. City of Dallas*, case no. 3:98–cv–2955–D, 2002 WL 230834, at *12–13 (N.D.Tex. Feb. 14, 2002) (granting summary judgment on Section 3604(a) claim for similar reasons).

"[T]he FHA was passed to ensure fairness and equality in housing, not to become some all-purpose civility code regulating conduct between neighbors." *Lawrence*, 318 F.Supp.2d 1133, at 1143 (internal citations omitted); *see also* 42 U.S.C. §3601. As such, nothing in the language of §3604 "implies protection against alleged discrimination in the use or enjoyment of a dwelling years after a dwelling is purchased." *Lawrence*, 318 F.Supp.2d at 1142 (internal citations omitted). "By [its] plain terms subsection[] 3604(a) . . . reach[es] only discrimination that adversely affects

the availability of housing." *See Clifton Terrace Assoc., Ltd.*, 929 F.2d at 719 (holding no §3604(a) and (b) violation where elevator company refused to repair elevator in housing project).

"Other courts have similarly held that section 3604 of the FHA applies only to claims relating to the buying or selling or leasing of housing." *Id*. (*citing Walton v. Claybridge Homeowners Ass'n., Inc.*, 2004 WL 192106, at *4 (S.D. Ind. Jan.22, 2004) (§3604 prohibits discrimination associated with sale or rental of housing); *United States v. Weisz*, 914 F.Supp. 1050, 1054 (S.D.N.Y.1996) (conduct interfering with neighbor's enjoyment of their dwelling because of religion did not implicate §3604); *Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*., 208 F.Supp.2d 896, (N.D. Ill. 2002) (§3604(b) claim dismissed in light of the allegation that plaintiffs owned their home before problems began)). If anything, "[a] lack of [fencing] is a matter of habitability, not availability, and does not fall within the terms of [§ 3604]." *Clifton Terrace Assoc., Ltd.*, 929 F.2d at 719.

Plaintiffs appear to be seeking a dramatic expansion of the Fair Housing Act by claiming it allows families with children to make whatever modifications they deem necessary in order to make a dwelling subjectively suitable, or "habitable" for their children. The Fair Housing Act does not provide this kind of protection to families with children. Instead, "the pertinent clauses in subsection[] (b) . . . , which do[es] address habitability, [are] limited to services and facilities provided in connection with the sale or rental of housing." *Id*. at 720. Subsection (b) is "directed at those who provide housing and then discriminate in the provision of attendant services or facilities, or those who otherwise control the provision of housing services and facilities." *Id*. As noted by one federal court, "the term 'services,' as used in this section, does not include rules, policies, or practices of a homeowner association." *Lawrence*, 318 F.Supp.2d 1133, at 1142-43.

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 7

In *Lawrence*, the Plaintiffs purchased a home in an HOA managed subdivision. *Id*. at 1136-37. A racially motivated dispute arose between the Plaintiffs and their neighbor shortly after Plaintiffs moved in. *Id*. at 1137. The HOA Board and the Property Manager sent letters to each party asking them to stop their harassing conduct, but ultimately stated that the HOA, consistent with its rules, would not become involved in a personal dispute between neighbors. *Id*. Plaintiffs later moved out of the property and sued claiming the HOA's refusal to change its rules and intervene in the conflict made the property unsafe for them and thus unavailable in violation of the Fair Housing Act. *Id*. at 1138. Plaintiffs alleged that "because the Association had the power to impose rules and regulations, and because the documents afforded protection from nuisances and disturbances, the Association should have protected their right to quiet enjoyment of their home and common area property." *Id*. at 1140.

The court rejected Plaintiffs argument, stating that the Fair Housing Act "was passed to ensure fairness and equality in housing" and is "limited to conduct that directly impacts the accessibility to housing because of a protected classification." *Id*. at 1143. The court then found that while the neighbor feud was undesirable and made residing at the home less than ideal, the HOA's failure to intervene did not have any impact on the Plaintiffs ability to purchase their home and it did not otherwise make the home unavailable to Plaintiffs. *Id*. Thus, the HOA was not required to change its rules or regulations in order to make a protected individual more comfortable in their home. *See Id*. Rather, the HOA is simply required to treat protected individuals, including families with children, the same way they treat non-protected classes and families without children. *Id*.; *accord Jackson v. Okaloosa County*, 21 F.3d 1531, 1542 (11th Cir. 1994).

Similar to the rationale squarely rejected by the court in *Lawrence*, the IFHC and the Hills

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 8

seek to have this Court interpret the phrase "otherwise make unavailable" under §3604 so broadly that any practice by an HOA that a plaintiff deems to interfere with a protected individual's desired use and enjoyment of a dwelling now becomes actionable as housing discrimination. Such a conclusion would dramatically expand this section of the FHA to include not only a <u>prohibition against discriminating</u> against families with children, <u>but to create an affirmative duty on the part of a HOA to make any and all accommodations requested</u> by families with children. River Run contends the law does not place such an obligation on a HOA.

For example, under the FHA, a landlord is not permitted to prevent a person with children from living in a third story apartment simply because they have children. However, under Plaintiffs desired interpretation, such a landlord would not only be required to allow the family to reside on the third story, but to also allow the family to make changes to the apartment to better suit their individual family needs. Perhaps a family would want to replace the balcony railing with a solid enclosure — "for the safety of their children" — or perhaps they would need to store the children's bikes and toys on the first floor somewhere so the children could use them without having to carry them up and down the stairs. The FHA does not mandate such an accommodation requirement despite the subjective desires of a tenant.

Similarly, if a family lived in the first floor condominium with an open patio, the landlord would not be required to permit a fence around their patio so their children could play outside without risking them wandering away despite the fact this might be "safer for the children." To allow otherwise would allow a family with children subjective accommodations to effectively nullify every HOA architectural rule in America as well as the similar rules by any apartment or condominium and any zoning restrictions enacted by any county or municipality. Under Plaintiffs

interpretation, any rule that in any way restricted that person's use or enjoyment of their home would suddenly become discriminatory and actionable.

It is undisputed that the allegedly discriminatory conduct occurred nearly two years after the Hills purchased the Property. *Simmons Aff.* Ex. A, B. Hill Dep. 81:19-82:2. No evidence exists that any of the actions of River Run made the Hills' dwelling inaccessible for purchase, sale, or rent. Likewise, there is no evidence that the Hills were evicted or otherwise denied access to River Run facilities or the use of their Property. As such, the alleged discriminatory conduct — not approving their desired fence application — did not "otherwise make unavailable" the Property. As a result, their discrimination claim must fail.

In addition to being an unreasonable expansion of the FHA, Plaintiffs interpretation is inconsistent with other provisions of the FHA. Section 3604(f)(1) and (f)(2) are almost identical to Sections 3604(a) and (b), but apply specifically to individuals with a disability. Unlike Section 3604(a)-(b), however, Section 3604(f) specifically affords additional protection for people with disabilities. Subsection (f)(3)(B) defines discrimination to include: (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling ...." 42 U.S.C. §3604(f)(3)(B).

Congress presumably included the extra language in Section 3604(f)(3) defining discrimination in the disability context to give greater protection to disabled individuals after the sale or rental of a dwelling than other protected groups. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

purposely in the disparate inclusion or exclusion."). This Court should not construe a provision of a statute to be surplusage. *Id.* The FHA does not require an HOA to allow a family with minor children the accommodation of having whatever size and type of fence they desire so they can use or enjoy their property.[1] *See Robinson v. City of Friendswood*, 890 F. Supp. 616, 621 (S.D. Tex. 1995) ("Reasonable [administrative] limitations may continue as long as they treat all citizens equally and do not in effect discriminate against [a protected individual]."). Instead, the FHA simply requires that property owner or rental agency be fair and not treat families with children differently than other individuals. *Id.*

Congress's intentional omission of use and enjoyment language from §3604(a)-(b), while using it in §3604(f)(3)(B), means that Congress did not intend to apply the protection of use and enjoyment under §3604(a) and (b). Stated another way, if §3604(a) and (b) included discrimination based on use or enjoyment of a ***purchased*** dwelling, Congress would not have needed to codify §3604(f)(3), because such protection would have already existed.

It is undisputed that Hills and their children are not disabled. *Simmons Aff.* Ex. A, B. Hill Dep. 143:15-17. As a result, the FHA does not require River Run to make a special accommodation to the fencing rules for the Hills simply because they are a family with children. The Architectural Committee's obligation to balance the individual needs of a homeowner with the overall desire of the entire subdivision to limit fences represents a circumstance that applies equally to all homeowners in River Run regardless of familial status. *Simmons Aff.* Ex. C, Drake Dep. 55:8-11. Furthermore, it is undisputed that multiple Board and Committee members of River Run attempted to work with the Hills to find a fence option to protect the Hills' children. *Drake Aff.* Ex. G;

―――――――――――――――#
[1] Even with a disabled individual, the required accommodation is still only what is "reasonable."

*Simmons Aff.* Ex. B ¶¶ 4-7. Unfortunately, these efforts were not only rejected by the Hills, but the Hills elected to abandon their application to the River Run Board without any final decision ever being made. *Simmons Aff.* Ex. A, B. Hill Dep. 249:2-250:11, Ex. 32.

In sum, the fact the River Run Architectural Committee denied the Hills' application seeking to fence in the majority of their back yard does not support the conclusion that River Run violated the FHA. Requiring the Hills to comply with the same fencing rules as individuals without children does not amount to discrimination, does not deprive the Hills of their Property, and is not a valid basis for a claim of discrimination under the Fair Housing Act.

### 2. Plaintiffs Lack Standing to Pursue a Claim under §3604(c).

Section 3604(c) makes it unlawful "[t]o make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination." 42 U.S.C. §3604(c). While this subsection is inapplicable because River Run is not involved with the sale and rental of a dwelling, even if applicable, Plaintiffs lack standing to pursue the claim. Standing requires proof of a concrete and demonstrable injury to the individual or to the organization's activities. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

To state a claim in the Fair Housing context, a plaintiff must show that "as a result of the defendant's actions he has suffered 'a distinct and palpable injury.'" *Id*. at 372. "[S]tanding must be established independent of the lawsuit filed by the plaintiff." *Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219 (9th Cir. 2012) (internal citations omitted). "An organization 'cannot manufacture [an] injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all."

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 12

*Id.* (*quoting La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir.2010)). "It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010).

Plaintiffs only factual allegation related to its 3604(c) claim involves certain signage posted at the pool and tennis courts. Dkt. 1 ¶ 13-14. While River Run denies that its pool and tennis court rules were discriminatory, it nevertheless removed these signs in February of 2015. *Drake Aff.* ¶ 20, Ex. N. More relevant, however, is the fact that both Brian and Anne Hill testified that neither they nor their children used the tennis courts, they did not see the signs, and they were never prevented from using the River Run community pool. *Simmons Aff.* Ex. A, B. Hill Dep. 47:21-49:15, 49:16-51:1; Ex. D, A. Hill Dep. 46:3-47:11, 108:24-109:11.

As such, the Hills cannot point to having suffered any alleged injury related to this signage. Likewise, because River Run removed the signage prior to IFHC's involvement in filing a HUD complaint, IFHC has not incurred any expense in addressing the signage other than those related to pursuing this litigation in general. As a result, even if applicable, neither the Hills nor IFHC have standing to bring a claim under §3604(c).

**3. Plaintiffs Have Failed to Establish a *Prima Facie* Case of Discrimination.**

In the event the above analysis is not dispositive of Plaintiffs' claims, there is also no evidence that River Run treated the Hills differently than any other homeowner in the Subdivision. Under the Fair Housing Act, to survive a motion for summary judgment, a plaintiff must provide either direct evidence of intentional discrimination or establish a *prima facie* case of discrimination. *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997); *compare Harris*

*v. Itzhaki*, 183 F.3d 1043, 1048 (9th Cir. 1999). "[R]arely will a case be made out on the basis of direct evidence. In the absence of direct evidence, the plaintiff must establish intentional discrimination through circumstantial evidence." *Palm Partners, LLC v. City of Oakland Park*, 102 F. Supp. 3d 1334, 1342–44 (S.D. Fla. 2015).

In this case, there is no direct evidence of discrimination by River Run. Absent direct evidence of discrimination, plaintiff must provide sufficient evidence to support each element of the *prima facie* case in order to withstand summary judgment. *United States v. Branella*, 972 F. Supp. 294, 299 (D.N.J. 1997). The elements of the prima facie case will depend on whether the alleged discrimination is based on disparate treatment or disparate impact. *Id.*; *accord Gamble*, 104 F.3d at 304-05.

## A.  Disparate Treatment

A plaintiff must indirectly prove they were treated differently because of a discriminatory purpose. *Gamble*, 104 F.3d at 305. To prove indirect discrimination, courts apply a burden shifting analysis known as the *McDonnell-Douglas* analysis. *Id*. Under this analysis, "the plaintiff must first establish a prima facie case" of discrimination. *Id.* "Second, if the plaintiff establishes the prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action." *Id*. "Third, if the defendant satisfies its burden, the plaintiff must prove by a preponderance of evidence that the reason asserted by the defendant is a mere pretext." *Id*.

### 1.  *Prima Facie Case*

"[T]he prima facie case is a flexible standard that may be modified to relate to different factual situations." *Reynolds v. Quarter Circle Ranch, Inc.*, 280 F. Supp. 2d 1235, 1241 (D. Colo. 2003) (internal citations omitted). To establish a *prima facie* case, based on the denial of an

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 14

application by an HOA architectural committee ("AC"), federal courts have held a plaintiff must show that:"1) they are members of a protected class; 2) they submitted adequate plans for AC approval; 3) their application was rejected; and 4) other similarly situated applicants were treated more favorably." *Id.*; *accord Gamble*, 104 F.3d 300. It is undisputed that the Hills are members of a protected class by being a family with children. However, the remaining three requirements are disputed.

## A.  The Hills Did Not Submit a Complete Application for AC Approval

The Fair Housing Act protects individuals from discrimination, but it does not "insulate such individuals from legitimate inquiries designed to enable local authorities to make informed decisions . . . such as whether, or on what terms, to grant [specific] permits." *Robinson v. City of Friendswood*, 890 F. Supp. 616, 621 (S.D. Tex. 1995) (internal citations omitted).[2] "Reasonable [administrative] limitations may continue as long as they treat all citizens equally and do not in effect discriminate against [a protected individual]." *Id*.

Therefore, to state a claim under the FHA, a plaintiff must show that they complied with the same application requirements applicable to all individuals. *Reynolds*, 280 F. Supp. 2d at 1241; *accord Gamble*, 104 F.3d 300. A judgment in favor of the defendant is appropriate where the evidence clearly shows that the applications were deficient. *Jiminez v. Southridge Co-op., Section I, Inc.*, 626 F. Supp. 732 (E.D.N.Y. 1985) (application did not meet requirements because application did not include proof of assets in his application); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418 (E.D.N.Y.), *aff'd*, 45 F. App'x 59 (2nd Cir. 2002) (no discrimination in

_____#

[2] By citing *Robinson v. City of Friendswood*, 890 F. Supp. 616, 621 (S.D. Tex. 1995), Defendant does not admit that the Hills ever advanced a claim seeking a reasonable accommodation based on a disability.

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 15

rejecting application that did not meet the 80% mortgage financing requirement).

It is undisputed that the Hills did not submit a complete fencing application. *Simmons Aff.* Ex. A, B. Hill Dep. 217:9-15; *Drake Aff.* Ex. C. Brian Hill admitted in his deposition that he never submitted — either in his initial application denied by the River Run AC, or with his amended application — the required landscaping element nor did he provide proper drawings depicting the true size of the requested fence.[3] *Simmons Aff.* Ex. A, B. Hill Dep. 217:9-15. The fact that the Hills failed to submit a complete application prevents Plaintiffs from being able to establish a *prima facie* case of disparate treatment.

### B. River Run Never Issued a Decision on the Hill Fence Application Appeal

While the FHA protects certain classes of individuals from discrimination, it does not permit those individuals to circumvent the regular application process. *Robinson*, 890 F. Supp. at 621. "Plaintiff's failure to follow the permit procedure is not countenanced by the statute." *Id.* In order to prevail on a claim under the FHA, the Plaintiff must have followed the regular application procedure and been rejected. *Id.* As courts have explained,

> . . . if Congress had intended to exempt [protected] persons from participation in the usual procedural requirements of the [application] process, it could have done so expressly. Perhaps Congress elected not to follow that course because a

---
[3] The AC rules set forth a 40% size limit on fencing which represents the maximum size, however, a fence application is also subject to size considerations by related rule provisions that require that the proposal "***not be detrimental to the appearance of the surrounding area*** of the Property as a whole" and "***be in harmony with the surrounding structures and landscaping***." *Drake Aff.* Ex. B § 11.3 (emphasis added).The CC&Rs require that [detached improvements] be located ***within a reasonably compact area*** adjacent to the principal structure . . ." *Id.* Ex. B § 3.1.B (emphasis added). The CC&Rs also provide that the Architectural Committee, when approving the installation of a fence, consider the "***artistic conformity to the terrain***, ***to the River Run Plan***, and ***to other residences in the area***, and [the] ***architectural symmetry***" *Id.* Ex. B § 3.1.B (emphasis added). These were the issues River Run sought to work out with the Hills who elected to abandon their appeal to the River Run Board and to sell their home even before the date for the appeal meeting.

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 16

> fundamental tenet of the FHAA, . . . is to integrate [protected] individuals into society, not to further remove them from the normal and usual incidents of citizenship, such as participation in the public components of [permit] decisions, to the extent that such participation is required of all citizens whether or not they are [a protected class].

*Id.* (internal citations omitted). A plaintiff may not maintain a claim of discrimination against an organization for a failure to approve a proposal if they did not go through the process required by every individual in order to obtain approval. *See id.*

In this case, the fencing application process was the same for all residents regardless of whether they were in a protected class. The architectural committee would evaluate the application and vote on it, if the application was denied by the architectural committee, then the homeowner could appeal to the board who would make the final decision. *Simmons Aff.*, Ex. H-2, Holm Dep. 216:12-25; Ex. B ¶¶ 3-4. After the River Run architectural committee denied the Hill's incomplete application and individual members encouraged the Hills to consider various alternatives and appeal the decision to the board, the Hills unilaterally elected not to participate in the appeal process. *Drake Aff* ¶ 21, Ex. L, and Ex. O; *Simmons Aff.* Ex. A, B. Hill Dep. 267:3-268:12.

Per his own testimony, Brian Hill admits the River Run Board never voted on or denied his fencing application because he elected not to attend the River Run Board meeting on January 19, 2015. *Simmons Aff.* Ex. A, B. Hill Dep. 267:3-268:12. Instead, unknown to River Run until this litigation, the Hills immediately began inquiring about selling the Property the evening of the Architectural Committee's vote on November 6, 2014. *Simmons Aff.* Ex. A, B. Hill Dep. 249:2-250:11, Ex. 32. Because Plaintiffs cannot prove they completed the application process required for all residents, they cannot establish a *prima facie* case of discrimination.

//

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 17

### C.  No Similarly Situated Applications were Treated More Favorably

The final prong required to establish a *prima facie* case is that a plaintiff must show other similar applications were treated more favorably. *Reynolds v. Quarter Circle Ranch, Inc.*, 280 F. Supp. 1235, 1239 (D. Col. 2003). While the comparison requirements are not rigid and do not require "identical" situations, they do require some similarity with respect to the timing of other approvals and the rules under which the "similar" applications where approved. *See Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 157 (D. Mass. 2007). In *Pina*, the applicant requested permission to place a mobile home on her property and was denied. *Id*. The applicant sued under the FHA claiming she had been discriminated against. *Id*.

At summary judgment, the court found the applicant could not establish the fourth element because, although the plaintiff put forth evidence that two farmers possessed mobile homes on their property, the defendant was able to show that the mobile homes in question were "pre-existing structures" placed prior to the restrictions and thus did not fall under the ambit of the CC&R's. *Id*. The court held the plaintiff could not establish the fourth element without presenting evidence showing "that the [HOA] granted permits for the placement of mobile homes to other applicants." *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 157 (D. Mass. 2007).

Likewise, in *Loren v. Sasser*, the court, in evaluating the denial of a fencing application, found that even though the subdivision had permitted certain types of fences, there was no discrimination where Plaintiffs "failed to introduce any evidence that other houses in the deed-restricted subdivision have been permitted to construct fences on the ***front*** of their lots" as was requested by those Plaintiffs. 309 F.3d 1296, 1302–03 (11th Cir. 2002) (emphasis added).

This case is similar to *Pina* and *Loren.* The only enclosing fences that have been approved

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 18

are distinguishable from the fence requested by the Hill's and/or are existing fences that were grandfathered into the subdivision prior to the existence of the fencing restrictions. *Simmons Aff.* Ex. C, Drake Dep. 55:8-11. There is no evidence that River Run approved a similar fence for individuals without children. Indeed, no other single-family homes along the entire area adjacent to the Hill Property have backyard enclosing fences at all. *Drake Aff.* ⸿ 7; *Simmons Aff.* Ex. A, B. Hill Dep. 197:18-24; *Simmons Aff.* Ex. D, A. Hill Dep. 45:1-4. Brian Hill admitted that he is unaware of any similar fences that were ever approved by River Run other than one that was grandfathered in. *Simmons Aff.* Ex. A, B. Hill Dep. 197:18-24.

The River Run architectural committee rules limiting fences apply equally to all homes similar to the Hill Property regardless of familial status. As a result, the failure to approve the requested fence cannot serve as the basis of a violation of the Fair Housing Act. There is no evidence that other individuals were treated more favorably and allowed a similar fence. Thus, Plaintiffs are unable to establish a *prima facie* case of discrimination.

### 2. *Legitimate Non-Discriminatory Reason*

Following the *McDonnell Douglas* framework, even if Plaintiffs could establish a *prima facie* case, the burden of production would then shift to the Defendants to establish a legitimate non-discriminatory reason for its decision. *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997); s*ee McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In addressing this issue, Courts have applied a low threshold for establishing a legitimate non-discriminatory reason. *Gamble*, 104 F.3d at 304-05. For example, in *Gamble,* the Ninth Circuit held that concerns over preserving the character of the neighborhood is a legitimate non-discriminatory reason for denying a building permit. *Id.* (denying building permit for large adult living facility in single

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 19

family neighborhood legitimate even though other large structures were permitted). Similarly, other courts have found that specific concerns over the quality of life in the community are legitimate non-discriminatory reasons. *Mountain Side Mobile Estates P'ship v. Sec'y of Hous. & Urban Dev.*, 56 F.3d 1243 (10th Cir. 1995) (upholding limits on occupancy in trailer park due to septic system limitations and concerns over quality of park life).

Applying these recognized concerns of neighborhood character and quality of life, River Run has multiple legitimate non-discriminatory reasons for seeking to limit the type of fence the Hills' sought to place on their property. These include that the fence application was incomplete, the appeal process was abandoned by the Hills such that a final decision was never made by the HOA, the proposed fence was too large — according to the Architectural Committee Chairperson Tom Roush, who visited the property before voting on the proposal, the proposed fence area staked out by Brian Hill appeared to take up 80 to 90 percent of the Hills' back yard, *Simmons Aff.* Ex. B ¶ 4 — and the size and location of the fence substantially disturbed the "park-like" setting of the subdivision as there are absolutely no enclosing fences in that area and there have never been during the 40 year history of the subdivision, *Drake Aff.* Ex. C § 3.12.

There is no evidence that the basis for Architectural Committee's decision to deny the Hill Application was in anyway related to familial status. To the contrary, the record shows River Run went out of its way to attempt to accommodate the Hills, with several members offering alternative fencing proposals that would address the Hills' safety concerns while still preserving the character of the neighborhood. *Drake Aff*. Ex. G; *Simmons Aff*. Ex. B ¶¶ 4-7. These options included the use of a temporary fence that could be installed and then removed when the Hill children were older or the use of a smaller enclosing fence that would encompass a smaller grass area of the Hill

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 20

Property. *Drake Aff.* Ex. G. Unfortunately, the Hills were only interested in the fence they envisioned for their backyard and when they arbitrarily concluded they would not get what they wanted, the Hills moved away and filed this action. *Simmons Aff.* Ex. B ⁋⁋ 4-7.

The record in this case demonstrates River Run had a substantial and legitimate interest in preserving the character of the neighborhood that negates any potential finding of discrimination.

### 4. There is No Evidence that River Run's Rules or Restrictions Disparately Impact Families with Children.

There is no evidence that River Run's rules and policies against fences have a discriminatory impact on families with children. *See* 42 U.S.C. § 3601 *et. seq.*; Dkt. 1 ⁋ 11. "In contrast to a disparate-treatment case, where a 'plaintiff must establish that the defendant had a discriminatory intent or motive,' a plaintiff bringing a disparate-impact claim challenges practices that have a 'disproportionately adverse effect on [the protected group]' and are otherwise unjustified by a legitimate rationale." *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513 (2015); *see also Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (2013). The Supreme Court summarized the regulations' "burden-shifting framework" for adjudicating disparate impact claims as follows:

> Under the regulation, a plaintiff first must make a prima facie showing of disparate impact. That is, the plaintiff 'has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect.' 24 CFR § 100.500(c)(1) (2014). If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability. After a plaintiff does establish a prima facie showing of disparate impact, the burden shifts to the defendant to 'prov[e] that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests.' § 100.500(c)(2). [. . .] Once a defendant has satisfied its burden at step two, a plaintiff may 'prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that

has a less discriminatory effect.' § 100.500(c)(3)."

*Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2514-15.

A plaintiff who fails to establish facts or produce statistical evidence "demonstrating a causal connection cannot make out a prima facie case of disparate impact." *Id*. at 2523. While a *prima facie* case can be made by pointing to valid statistical data evidencing the resulting discriminatory effect, "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." *Id*. at 2516; *Id*.; *accord 2922 Sherman Ave. Tenants' Ass'n v. D.C.*, 444 F.3d 673, 684 (D.C. Cir. 2006). "A robust causality requirement ensures that [. . .] imbalance ... does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for [. . .] disparities they did not create." *Texas Dep't of Hous. & Cmty. Affairs*, 135 S. Ct. at 2516 (internal citations omitted).

In *Texas Dept. of Housing v. ICP*, the Supreme Court rejected the Plaintiffs *prima facie* case of racial discriminatory effect, dismissing the case in favor of defendants, after finding that although Plaintiff could produce statistical evidence showing that a higher percentage of low-income housing was built in minority neighborhoods, Plaintiff could not show the statistical disparity was caused by defendant's policies and thus failed to make a *prima facie* showing. *Id*. at 2523. The Court explained that,

> Entrepreneurs must be given latitude to consider market factors. [Decision-makers], moreover, must often make decisions based on a mix of factors, both objective (such as cost and traffic patterns) and, at least to some extent, subjective (such as preserving historic architecture). These factors contribute to a community's quality of life and are legitimate concerns for housing authorities. The FHA does not decree a particular vision of urban development[.]

*Id*.

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 22

In this case, Plaintiffs have alleged the following unverified statistics in their Complaint: "According to United States Census data, over 20% of River Run's population is over the age of 65. Only 17% of River Run's population is under the age of 19. River Run is one of the few neighborhoods in Boise that has a higher percentage of people over the age of 65 than people under the age of 19." Dkt 1 ¶ 11. Despite being requested in discovery, however, Plaintiffs have not produced any evidence that this data: 1) amounts to a statistically significant disparity at all; 2) that any minor disparity is not due to the simple fact that the residents who bought their homes 30 to 40 years ago have naturally aged with the subdivision; 3) that there is any connection between any alleged disparity and the River Run fencing rules; or 4) is supported by any expert testimony. As such, the defense is entitled to summary judgment on any disparate impact claim.

**5.  There is No Evidence River Run Retaliated Against the Hills in Violation of 42 U.S.C. § 3617 of the Fair Housing Act.**

Lastly, Plaintiffs broadly allege in their single cause of action that River Run retaliated against the Hills in violation of 42 U.S.C. § 3617 of the FHA. Dkt. 1 ¶ 62. On this topic, the Fair Housing Act provides:

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. §3617. Case authority makes it clear, however, that this statute "extends only to discriminatory conduct that is so severe or pervasive that it will have the effect of causing a protected person to abandon the exercise of his or her housing rights." *Lawrence v. Courtyards at Deerwood Ass'n, Inc.*, 318 F. Supp. 2d 1133, 1144 (S.D. Fla. 2004); *accord Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017) (analyzing similar Title VII statute).

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 23

To make out a *prima facie* case of retaliation under the FHA, the Plaintiff must establish "that (1) the plaintiff was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1180 (9th Cir. 2006). Any evidence of conduct that predates the FHA complaint is irrelevant to a retaliation claim. *See id.*

Additionally, a plaintiff cannot prevail on a retaliation claim based on an individual's isolated remarks alone. *Walton v. Claybridge Homeowners Associaton, Inc.*, 191 F. App'x 446, 451 (7th Cir. 2006). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) are not sufficient to create an actionable claim" of coercion, intimidation, threatening, or interference. *Reynaga*, 847 F.3d at 687 (internal citations omitted) (analyzing similar Title VII statute); *see also Walton*, 191 F. App'x at 451. Stray remarks must have "some nexus" to the associations challenged action that exceeds simply being uttered by an individual with board membership. *Walton*, 191 F. App'x at 452.

With this background, any claim for retaliation must fail as a matter of law for multiple reasons. First, all of alleged retaliatory conduct occurred prior to Plaintiff filing the HUD complaint on July 16, 2015, and as such is completely irrelevant to Plaintiffs' retaliation claim. Second, Plaintiffs' allege in their complaint that individual members made statements about the Hills' fence request, however, none of these isolated and insignificant statements support a claim for retaliation. Dkt. 11 ¶¶ 33, 35-36, 38. The alleged statements were made at the time the initial Architectural Committee application was denied in October 2014 and were not in response to the Hills HUD Complaint. Dkt. 34-38. Likewise, any statements allegedly made were isolated, did not

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 24

arise to the level "sufficient to create an actionable claim" (i.e. the Hills assert they were intimidated when River Run residents stated River Run is not like Meridian where backyard boundary line fences are commonplace), and were not made on behalf of River Run, but rather represented the personal comments of individual members.

Furthermore, there is no evidence that River Run took any "adverse action" against the Hills. To the contrary, River Run Board and AC members repeatedly recommended the Hills appeal their fence application to the River Run Board for further discussion to find a solution, however, the Hills elected to abandon their application. *Drake Aff* ⸿ 21, Ex. L, and Ex. O; *Simmons Aff.* Ex. A, B. Hill Dep. 267:3-268:12. Moreover, while Plaintiffs claim River Run changed the fencing rules to eliminate the Hills' ability to seek the enclosing fence option, the record before the court shows that never occurred. Dkt. 1 ⸿ 32. The Hills were informed multiple times in writing that their fence application would be evaluated under either the rules in place in October 2014 when the application was submitted or they could have their application considered under the November 2014 amended rules. *Drake Aff.* Ex. G and Ex. K. The Hills opted for the rules in place in October 2014, thereby eliminating any claim they were subjected to having their fence application evaluated under different rules. *Drake Aff.* Ex. G and Ex. M.

Not only do the facts fail to establish the Defendants directed any threatening conduct toward the Hills, the facts do not present any evidence from which a reasonable jury could find or infer that the Defendant's alleged conduct toward the Hills was pervasive, severe, threatening or violent, or was in response to the Hills HUD Complaint. As such, any claim for retaliation must fail.

*//*

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 25

## IV.    ATTORNEY FEES

Pursuant to 42 U.S.C. § 3612(p), a court may award the prevailing party, in a claim made under the FHA, reasonable attorney's fee and costs. For all the reasons articulated above, the court should grant River Run's Motion and find it to be the prevailing party, and award River Run the reasonable attorney's fees and costs incurred in defending this action.

## V.    CONCLUSION

For the foregoing reasons, River Run respectfully requests that the Court grant it summary judgment in this matter.

DATED this 18th day of July, 2019.

QUANE JONES McCOLL, PLLC


 */s/ Chynna C. Simmons*
Terrence S. Jones, Esq.
Chynna C. Simmons, of the Firm
*Attorneys for Defendant River Run HOA, Inc.*

<u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on this 18th day of July, 2019, I served a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SMMARY JUDGMENT by delivering the same to each of the following:

| | | |
|---|---|---|
| Brian A. Ertz | | |
| Eileen R. Johnson | ☒ | CM/ECF |
| Ertz Johnson, LLP | ☐ | Email |
| 2399 S. Orchard St., Ste. 204 | | |
| PO Box 665 | | |
| Boise, Idaho 83701 | | |
| Telephone: (208) 918-1663 | | |
| Facsimile: (208) 416-6665 | | |
| brian@ertzjohnson.com | | |
| eileen@ertzjohnson.com | | |
| *Attorneys for Plaintiffs* | | |

| | | |
|---|---|---|
| Christopher Brancart, *pro hac vice* | | |
| Brancart & Brancart | ☒ | CM/ECF |
| PO Box 686 | ☐ | Email |
| Pescadero, CA 94060 | | |
| Telephone: (650) 879-0141 | | |
| Facsimile: (650) 879-1103 | | |
| cbrancart@brancart.com | | |
| *Attorneys for Plaintiff* | | |

| | | |
|---|---|---|
| Monica Fabbi | | |
| Intermountain Fair Housing Council | ☒ | CM/ECF |
| 4696 W. Overland Rd., Ste. 140 | ☐ | Email |
| Boise, Idaho 83705 | | |
| Telephone: (208) 383-0695 | | |
| Facsimile: (208) 383-0715 | | |
| mfabbi@@ifhcidaho.org | | |
| *Attorneys for Plaintiff IFHC* | | |

                                 /s/ Chynna C. Simmons

MEMORANDUM IN SUPPORT OF DEFENDANT RIVER RUN HOMEOWNERS ASSOCIATION, INC.'S MOTION FOR SUMMARY JUDGMENT - 27